Olga de Belaieff v. Commissioner.
Belaieff v. Commissioner
Docket No. 43549.
United States Tax Court
T.C. Memo 1956-273; 1956 Tax Ct. Memo LEXIS 18; 15 T.C.M. (CCH) 1426; T.C.M. (RIA) 56273; December 12, 1956
C. L. McKaig, Esq., for the petitioner. Henry C. Stockell, Jr., Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioner for the years 1944 through 1949, and additions to tax for failure to file returns for the years 1944 through 1948, as follows: Addition
Year
Deficiency
to Tax
1944
$ 684.00
$171.00
1945
2,200.00
550.00
1946
1,862.00
465.50
1947
1,862.00
465.50
1948
1,572.80
393.20
1949
1,572.80
*19 The questions for decision are (1) whether monthly payments received by petitioner during the years in question were income to her under section 22(k) of the Internal Revenue Code of 1939, and (2) whether petitioner is liable for additions to tax for failure to file returns for the years 1944 to 1948, inclusive, as respondent has determined. Findings of Fact Petitioner, an individual. resides on Siesta Key, Sarasota, Florida. She filed an income tax return for 1949 with the collector of internal revenue for the district of Florida. She filed no returns for the years 1944 through 1948. Petitioner and Arthur Julian Moulton, a citizen of the United States, were married on or about July 24, 1934, in France. At the time of the marriage, petitioner was not a citizen of the United States. Moulton owned a residence in France and one or more residences in the United States, and after the marriage, petitioner and Moulton spent part of their time in the United States and part of their time in France. By 1938, differences had arisen between petitioner and Moulton, and on some undisclosed date in 1938, Moulton, on a petition for divorce "presented" by him, petitioned the Tribunal of *20 First Instance of Rambouillet (Seine et Oise) to summon petitioner "in an attempt at concilation." Petitioner challenged the competency of the Tribunal in the matter, on the ground that the parties were domiciled in America. The Tribunal thereafter resolved the matter of its competency against petitioner, and after further hearing on Moulton's application for conciliation, at which there was no appearance on the part of the petitioner, entered an order of non-conciliation under date of June 24, 1938, and authorized Moulton to pursue his petition for divorce. Petitioner filed appeals to the Court of Appeals at Paris on both the order as to the competency of the Tribunal of First Instance and the order of non-conciliation. Petitioner came to the United States in 1938, and has resided in this country since that time. She became a naturalized citizen in 1940. By a writing executed by her on August 2, 1940, petitioner consented to the dismissal of her appeals from the orders above, and further agreed "that the action and proceedings instituted by Arthur J. Moulton against her in France" might proceed in accordance with French law as if no appeal had ever been taken by her from the said *21 orders, and directed her attorneys "to cooperate with the attorneys * * * for * * * Moulton and to take such steps and consent to the entry of any and all orders which may be necessary to carry into effect the foregoing." By an instrument in writing also dated August 2, 1940, but executed by Moulton on January 21, 1941, and by petitioner on November 17, 1941, and in consideration of the premises and "other good and valuable consideration," it was agreed that Moulton would pay petitioner the sum of $20,000 simultaneously with the execution and delivery of the instrument, and $750 per month on the first day of each and every month during her lifetime, or until she should remarry, the monthly payments to be computed from the first day of August, 1940; and further, by will, would provide that his obligations under the agreement should be a charge upon his estate, and that he would not by codicil or any other writing alter or modify the provisions of the said will. Petitioner, among other things, agreed that after execution and delivery of the said instrument, she would execute any documents approved by her counsel (1) to dismiss certain actions by her against Moulton which were then *22 pending in the Supreme Court of New York County, New York, and (2) "to secure the withdrawal of any pending appeal in any action between the parties and the vacating of any stays therein." In addition, any and all property rights between the parties were settled and disposed of. The instrument carried a further provision that nothing therein should prevent, or be construed to prevent, either party from instituting or maintaining, or "continuing against the other any action for absolute divorce or from asserting, as a basis therefor, any grounds that may exist at the date" of the agreement; and further, that in the event any final judgment or decree of divorce should be entered, whether in Europe, or in any state of the United States, the said agreement might, at the instance of either party, be incorporated in and made a part of the decree. Provision was also made that any divorce decree thereafter entered between the parties might provide that petitioner should not thereafter use the name "Mrs. Arthur Julian Moulton," or the name of "Moulton," or any part thereof as her name; that "in the event that any decree of divorce shall contain such provision and the Wife shall violate *23 the terms thereof, then in lieu and instead of the Husband's obligation to the Wife to pay the sum of $750.00 per month as provided for in subdivision (b) of Article 6 hereof, the Husband shall thereafter be required to pay to the Wife only the sum of Four Hundred ($400.00) Dollars per month so long as the Wife shall continue to violate the terms and provisions of that portion of the decree." Pursuant to the above instrument, petitioner received payment of $750 per month from August 1, 1944, through the taxable years herein. Some months after August 25, 1944, the date the forces of the United States and her Allies entered Paris, petitioner was advised that Moulton had procured a divorce and was furnished with a purported copy of a decree of divorce obtained by Arthur Julian Moulton before the Court for Civil Matters of Original Jurisdiction (Seine et Oise) on July 26, 1944. The purported decree contained no provision for the payment of support or maintenance money to petitioner, but was silent on the subject, and contained no reference to the settlement agreement dated August 2, 1940. Petitioner was also advised that Moulton subsequently remarried, and she either knew or was advised *24 that "he came with his new wife here in Newport in 1950." At the time petitioner executed the agreement of August 2, 1940, whereunder the payments in question were made by Moulton to her, she was advised by her attorney that the payments would come to her free of any tax. She was not aware of section 22(k) of the Internal Revenue Code of 1939, which was enacted as a part of the Revenue Act of 1942. She filed the above 1949 return after being visited by an internal revenue agent in her home in Sarasota in 1949. In the said return, she acknowledged the receipt of 12 monthly payments of $750 each under the agreement of August 2, 1940, but took the position that they did not constitute taxable income to her within the provisions of section 22(k), stating: "The subsequent decree of divorce, secured in 1945 by my former husband, Arthur J. Moulton, in Paris, France, makes no reference to the prior separation agreement, and does not mention anything concerning alimony, or any other payments." Opinion The question is whether payments of $750 per month received by petitioner from Moulton, pursuant to the settlement agreement, for the period August 1, 1944, through 1949, were payments *25 received by her pursuant to a written instrument incident to divorce within the meaning of section 22(k) of the Internal Revenue Code of 1939. [1]
Pointing to the fact that section 22(k) is, by its terms, limited to the "case of a wife who is divorced or legally separated from her husband," it is argued in petitioner's behalf that "there is no legal acceptable evidence" that there was in fact a decree *26 of divorce or separation, that in the circumstances of this case, the burden of proof with respect thereto is on the respondent, and that if the Court should determine there was a decree of divorce or separation in existence or that the burden of proof was on the petitioner, then the Court will have to further find that the agreement, or substance of the agreement, was included in such decree, or by appropriate language was approved by such decree. The evidence shows that on some undisclosed date following entry of Paris by American troops in 1944, petitioner was advised that Moulton had obtained a divorce, and she was furnished with a paper purporting to be a decree of divorce entered in France under date of July 26, 1944. It further appears that in filing her 1949 return, in March of 1950, she represented to the respondent that a decree of divorce had been procured by Moulton, giving as her reason for not reporting the payments received under the 1940 agreement, that the decree of divorce made "no reference to the prior separation agreement, and does not mention anything concerning alimony, or any other payments." Furthermore, having observed petitioner in the course of her testimony, *27 having listened carefully to the testimony as it was given, and having reviewed the transcript thereof, we are satisfied that petitioner personally accepted the procurement of such a decree of divorce by Moulton as a fact. Be that as it may, however, and noting again the language of the statute, there is inherent in the respondent's determination of deficiency under section 22(k) a determination that there was a divorce or legal separation, and it is well settled that respondent's determination is presumptively correct, and, except as to fraud and transferee liability where by statute [2] the burden of proof is on the respondent and in respect of new matter pleaded by the respondent, the burden of proof is on the petitioner. Helvering v. Taylor, 293 U.S. 507, 515; Welch v. Helvering, 290 U.S. 111, 115; and Jones v. Commissioner, 38 Fed. (2d) 550, 552. See also Rule 32 of the Rules of Practice before the Tax Court. [3] Accordingly, the existence of the divorce must be regarded as a determined fact, and in passing, it may be noted that by the representations made in her 1949 return, petitioner actually supplied a factual basis for the respondent's *28 determination. We are also of the opinion that the agreement of August 2, 1940, qualifies as an agreement incident to divorce under section 22(k). Providing specifically that nothing therein contained should prevent either party from instituting, maintaining, or "continuing" an action for absolute divorce against the other, that promptly after its execution and delivery, petitioner would execute any documents prepared by Moulton's counsel and approved by her counsel "to secure the withdrawal of any pending appeal in any action between the parties and the vacating of any stays therein," and that at the instance of either party, it should be incorporated in and made a part of any final decree of divorce in any proceeding between the parties, the said agreement evidence a full and complete settlement of all marital obligations on the part of Moulton to petitioner and of all *29 property rights between them. And in furtherance of the purpose indicated, petitioner, also under date of August 2, 1940, had executed a written consent to the withdrawal of her appeal from the non-conciliation order of the French court, which had authorized Moulton to pursue his petition for divorce, and that the action which had been so instituted by Moulton might proceed in the court in accordance with the laws of France, as if she had never taken an appeal. On such facts, there can be no question, we think, that Moulton contemplated pursuing his action for divorce, that petitioner and her counsel so understood, and that in consideration of the settlement provided, she agreed that he might pursue the action to final and ultimate disposition, and, as noted above, it is inherent in respondent's determination that he did so. It accordingly follows that the agreement of August 2, 1940, and under which the payments herein were made, was, under section 22(k), an agreement incident to the divorce, when obtained. Jessie L. Fry, 13 T.C. 658; George T. Brady, 10 T.C. 1192. And further, for the purposes of section 22(k), it is of no consequence that the subsequent *30 decree of divorce did or did not make mention of the agreement. Bertram G. Zilmer, 16 T.C. 365; Floyd W. Jefferson, 13 T.C. 1092, 1097; Jessie L. Fry, supra; George T. Brady, supra; Robert Wood Johnson, 10 T.C. 647; and Tuckie G. Hesse, 7 T.C. 700. The petitioner makes the alternative claim that as to $350 per month the respondent's determination was in error, in that that amount was paid to her as consideration for her agreement not to use the name of "Moulton," and, by reason thereof, only $400 of each monthly payment could represent a payment within the meaning of section 22(k). The difficulty with the claim so made is that the agreement did not so provide. It merely provided that any divorce decree thereafter entered might contain a provision against the further use by petitioner of the name "Moulton" and in the event the decree did contain such a provision and it was violated, Moulton should thereafter be required to pay petitioner only the sum of $400 per month, for so long as she continued to violate the said provision, instead of $750 per month. The decree is not in evidence, and there is no *31 showing that it contained any provision with respect to the use of the name "Moulton" by petitioner. For lack of factual support, the claim is denied. Further, it does not necessarily follow that the said $350 per month would not still be income to petitioner even if the decree had contained a provision to the effect stated. Finally, we have the question as to the respondent's determination of additions to tax for failure on the part of petitioner to file returns for the years 1944 through 1948. According to the statute, section 291 of the 1939 Code, the additions to tax are mandatory, unless it is shown that the failure to file the returns for the years stated was "due to reasonable cause and not due to willful neglect." In substance, the basis of petitioner's claim appears to be that at the time the agreement of August 2, 1940, was executed by her, she was assured by her counsel that she would receive the monthly payments free of tax; that she relied on that representation; that she was not aware of the enactment of section 22(k) of the Revenue Act of 1942; and that she was handicapped with respect to such matters by her lack of knowledge of American law and customs and her difficulties *32 with the English language. We are satisfied that petitioner's failure to file returns for the years in question was not due to willful neglect. To avoid the addition to tax, however, it must also appear that the failure to file returns was due to reasonable cause. Simply stated, her failure to file returns for the years in question was due to ignorance of the law, and the arguments advanced in her behalf so indicate. The advice received by her from her attorneys at the time the agreement was executed in 1940 was correct, both in fact and in law, and the advice continued to be sound until the divorce in July of 1944. Whether she was still represented by the attorneys who had advised her in connection with the signing of the agreement, we do not know. If so, it would appear that they failed to inform her as to the law when she was advised that the divorce had been granted, and there is no claim that she sought any advice after being so advised. Ignorance of the law does not constitute reasonable cause, within the meaning of section 291(a). Charles E. Pearsall & Son, 29 B.T.A. 747, and Samuel Goldwyn, Inc., Ltd., 43 B.T.A. 1086. See also Fraternal Order of Civitans of America, 19 T.C. 240, *33 wherein it was held that sincere belief on the part of the taxpayer that it was exempt did not constitute reasonable cause under the statute. See and compare Rafael Sabatini, 32 B.T.A. 705, wherein it was pointed out that the taxpayer, though a non-resident alien, was represented by counsel in this country "and undoubtedly could have obtained a ruling as to the taxable status of the payments he was receiving from within the United States." Petitioner has not shown that her failure to file returns for the years 1944 through 1948 was due to reasonable cause, within the meaning of the statute. Decision will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(k) Alimony, Etc., Income. - In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *↩
2. Sections 7454 and 6902(a), Internal Revenue Code of 1954↩. 3. RULE 32. BURDEN OF PROOF. The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent.↩